UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-4453(DSD/JJG)

Mary Norby,

        Plaintiff,

v.                                                              **ORDER**

Twin City Carpenters and
Joiners Health and Welfare
Fund,

        Defendant.

      Andrew J. Rorvig, Esq., Paul F. McEllistrem, Esq. and Hauer and Fargione, 5901 South Cedar Lake Road, Minneapolis, MN 55416, counsel for plaintiff.

      Amy L. Court, Esq. and McGrann, Shea, Anderson, Carnival, Straughn & Lamb, 800 Nicollet Mall, Suite 2600, Minneapolis, MN 55402, counsel for defendant.


This matter is before the court on defendant Twin City Carpenters and Joiners Health and Welfare Fund's (the "Fund") motion to dismiss. Based upon a review of the file, record and proceedings herein, and for the following reasons, the court grants the Fund's motion.


**BACKGROUND**

The Fund is a multi-employer, jointly-trusteed fringe benefit plan that provides health and welfare benefits to eligible participants as set forth in the Fund's Summary Plan Description and Plan Document ("Plan"). The Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., governs the Plan, and plaintiff Mary Norby ("Norby") was an eligible Plan participant at all times relevant to this litigation. According to the Plan, the Fund maintained subrogation rights in the event of an injury to a Plan participant.

On September 27, 2002, Norby injured her knee when she fell at a store owned by Apollo Oil Company ("Apollo"). Norby later retained counsel to pursue a claim against Apollo. On June 4, 2003, the Fund's counsel wrote Norby's counsel indicating that the Fund had first-priority rights of subrogation and reimbursement on any recovery by Norby. (Compl. Ex. A.) At her request, Norby's counsel entered a subrogation agreement on August 7, 2003, recognizing the Fund's contractual first-priority rights.

In 2006, Norby's counsel determined that pursuing Norby's claim would be impracticable because of difficult legal issues and the Fund's subrogation interest. Therefore, on August 11, 2006, Norby's counsel wrote the Fund's counsel indicating that he would only be willing to pursue Norby's claim if the Fund agreed to split any recovery equally in three parts. (Id. Ex. D.) The Fund agreed, and Norby's counsel settled her claim with Apollo for $25,000 in March 2007. At that time, the Fund had paid $16,755.28 in benefits related to Norby's injury. (Id. Ex. G.) Pursuant to the earlier agreement, upon payment of its share of the settlement, the Fund signed a "Release of Subrogation Interest" ("Release")

releasing and discharging Norby from its subrogation interest as related to the September 2002 incident. (Id. Ex. H.)

On April 27, 2007, the Fund denied three claims by Norby totaling $1,244, indicating that the "medical expenses were paid by a third party subrogation carrier." (Pl. Ex. B.) On May 22, 2007, the Fund denied another claim by Norby for $120, indicating that the claim was "not covered by th[e] benefit plan." (Id.) Finally, on June 25, 2007, the Fund denied two claims by Norby totaling $1,595.50, indicating that the "charges related to knee injury [are] not covered by th[e] plan" and the claim was "not covered by th[e] benefit plan." (Id.) For each denied claim, Norby received a form explaining her right to administratively appeal the denial under the Plan and her duty to appeal within 180 days.

Norby filed a complaint in federal court on November 1, 2007, alleging violation of ERISA and an equitable estoppel claim. On November 28, 2007, the Fund moved to dismiss, arguing that Norby failed to exhaust her administrative remedies. In response, Norby's counsel filed a written administrative appeal pursuant to the Plan on December 13, 2007. (Pl. Ex. A.)

**DISCUSSION**

**I.   Summary Judgment Standard**[1]

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  Moreover, if a plaintiff cannot support

---

[1] The court has considered evidence outside of the pleadings, including Norby's exhibit containing the letter appealing her claim denials.  (Pl. Ex. A.)  Therefore, the court treats the Fund's motion as one for summary judgment.  See Fed. R. Civ. P. 12(d).

each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id.

**II.  Exhaustion**

Norby acknowledges that ERISA governs the Plan and requires exhaustion of administrative remedies "as a prerequisite to suit when exhaustion is required" under an ERISA contract and "there is notice and ... no showing that exhaustion would be futile."  Wert v. Liberty Life Assurance Co., 447 F.3d 1060, 1065 (8th Cir. 2006) (citations and quotation omitted).  Further, Norby apparently concedes that the Plan requires exhaustion,[2] that the written denials provided notice of her right to appeal and that she did not plead exhaustion in her complaint.  Norby, however, argues that the Release supersedes the Plan and does not require exhaustion with respect to claims arising out of the September 2002 incident.

"The cardinal purpose of construing a contract is to give effect to the intention of the parties as expressed in the language

---

[2] The Plan provides that a participant has "the right to appeal the decision and request a review of the claim." (Def. Ex. A at 106.)  The denial letters include the same language. (Def. Ex. B.) Although the language describing the review procedure is permissive, so long as Norby had notice of the available procedures, she was obligated to exhaust those procedures before filing suit in federal court.  See Wert, 447 F.3d at 1066 ("[W]hether it is a denial letter or a plan document that uses permissive language to describe a review procedure, claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court." (quotation omitted)).

5

they used in drafting the whole contract." Art Goebel, Inc. v. N. Suburban Agencies, 567 N.W.2d 511, 515 (Minn. 1997).  Here, the Release provides that the Fund "does hereby release and forever discharge Mary Norby ... for subrogation arising out of payment by [the Fund] of medical expenses related to injuries sustained by [her] on September 27, 2002." (Compl. Ex. H.)  The plain terms of the Release are limited to subrogation, and nowhere does the Release reflect an intent to alter or abrogate the Plan's exhaustion procedures and requirements.  Therefore, regardless of the effect of the Release on the Plan's subrogation provisions or the Trust's subrogation rights, the court determines that Norby is required to exhaust her administrative remedies with respect to the denial of claims related to the September 2002 incident.

Norby further argues that exhaustion would be futile because the result on appeal would not change.[3]  Specifically, Norby contends that the same trustees that denied the original claims would review her claims on appeal, and that the trustees denied a substantially similar claim in Nowicki v. Minnesota Laborers Health and Welfare Fund, 2006 U.S. Dist. LEXIS 26063 (D. Minn. May 3,

---

[3] Norby actually argues that administrative review is unnecessary because the policies supporting exhaustion do not apply to this case.  (Pl. Br. at 12-15.)  However, because it is well-established that "benefit claimants must exhaust [their administrative remedies] before bringing claims for wrongful denial to [federal] court," the court understands Norby to argue that exhaustion would be futile.  Galman v. Prudential Ins. Co. of Am., 254 F.3d 768, 770 (8th Cir. 2001) (citation omitted).

6

2006).[4]  However, mere speculation that the trustees will deny a claim on appeal does not establish futility.  Goewert v. Hartford Life & Accident Ins. Co., 442 F. Supp. 2d 724, 730 (E.D. Mo. 2006) Otherwise, nearly all administrative appeals would be futile.  Id. Therefore, the court determines that it would not be futile for Norby to exhaust the Plan's administrative procedures. Accordingly, the court grants the Fund's motion.  However, because Norby has filed a timely administrative appeal on some of her claims, the court dismisses her complaint without prejudice.

**III.  Attorney's Fees**

The Fund requests attorney's fees and costs.  ERISA provides that a court "may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132.  To make this determination a court consults as general guidelines the following factors:

> (1) the degree of culpability or bad faith which can be assigned to the opposing party, (2) its ability to pay, (3) the potential for deterring others in similar circumstances, (4) whether the moving party sought to benefit all plan participants or beneficiaries or to resolve a significant legal question regarding

---

[4] The Fund argues that Norby is precluded from arguing futility because she did not plead it in her complaint. Exhaustion or an exception to exhaustion, however, is typically an affirmative defense rather than a pleading requirement, see Jones v. Bock, 127 S. Ct. 910, 919 (2007), and the court sees no justification for varying from this general rule in the ERISA context. Cf. id. ("[C]ourts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns." (citations omitted)).

>    ERISA, and (5) the relative merits of the parties' positions.

<u>Maune v. IBEW, Local No. 1, Health & Welfare Fund</u>, 83 F.3d 959, 963 (8th Cir. 1996) (citation omitted); <u>see also</u> <u>Parke v. First Reliance Std. Life Ins. Co.</u>, 368 F.3d 999, 1012 (8th Cir. 2004).

Although Norby has not properly exhausted her administrative remedies, there is no evidence that she acted in bad faith in bringing the present action.  Here, the court determines that this factor alone warrants denial of the Fund's request.

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the Fund's motion to dismiss [Doc. No. 5] is granted and Norby's complaint is dismissed without prejudice for failure to exhaust her administrative remedies.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  April 1, 2008

>                                   s/David S. Doty
>                                   David S. Doty, Judge
>                                   United States District Court